UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　Defendant. | Case No. 15-cv-02740-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**<br><br>Re: ECF No. 14 |

Before the Court is Defendant Secretary of the Department of Homeland Security's Motion to Dismiss and/or Strike Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f). ECF No. 14. For the reasons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

### A. Factual History

For the purpose of deciding these motions, the Court accepts as true the following factual allegations from Plaintiff's Complaint. ECF No. 1.

Plaintiff was born in 1968 and is a Federal Air Marshal ("FAM"). ECF No. 1 ¶ 4. Plaintiff is employed by the Transportation Security Administration ("TSA"), an agency within the Department of Homeland Security ("DHS"). Id.

The TSA targeted the Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa Field Offices ("selected Field Offices") for closure. Id. ¶ 9. The selected Field Offices were targeted because they had the highest percentage of older FAMs; about 90% of the FAMs in each selected Field Office were over 40 years of age. Id. ¶ 10. Although the TSA reassigned the FAMs to other Field Offices, the TSA made the moves extremely difficult, expensive, unpalatable, and problematic. Id. ¶ 13. The closures have caused, and will continue to cause, FAMs to lose money

in home investments and cause marital unrest. Id. ¶ 20. By making the move challenging for the FAMs, the TSA constructively discharged the FAMs. Id. ¶ 13. The intent of the TSA in closing the selected Field Offices was to force older FAMs from federal service, as the TSA hoped the older FAMs would quit rather than accept mandatory office reassignments. Id. ¶ 11. It has been represented to the older FAMS that the TSA intended to hire two new young FAMs to replace each older FAM. Id. ¶ 12. The TSA threatened to terminate the FAMs' employment if they refused to accept the reassignments. Id. ¶ 14.

Plaintiff worked in the Tampa Field Office and his performance was satisfactory or better. Id. ¶¶ 17–18. Yet, on August 19, 2014, Plaintiff received an email from his supervisor notifying Plaintiff of his reassignment with a memorandum attached from the Regional Director. Id. ¶ 16. The memorandum stated that Plaintiff had ten days to decide whether to accept the reassignment and that if Plaintiff chose not to accept the reassignment, the TSA would terminate Plaintiff's employment. Id. Termination would make Plaintiff ineligible for certain benefits. Id.

Plaintiff was reassigned to the San Francisco Field Office. Id. ¶ 17. Plaintiff experienced severe mental and emotional stress associated with the discriminatory closure of the Tampa Field Office. Id. ¶ 19. The threat of termination and loss of benefits compounded Plaintiff's mental and emotional stress. Id. ¶ 16.

But for Plaintiff's age, he would not have been designated for reassignment from the Tampa Office. Id. ¶ 25. Additionally, but for the high percentage of FAMs over 40 in the selected Field Offices, the TSA would not have designated those Filed Offices for closure. Id. ¶ 26. Plaintiff further alleges any nondiscriminatory reason for the closure of the selected Field Offices is "pretextual." Id. ¶ 24.

Plaintiff seeks $300,000 in compensatory damages, an injunction to address the discriminatory conduct and to prohibit future closes, costs and other damages, and any further relief deemed just. ECF No. 1 at 5.

### B. Procedural History

Plaintiff filed an Equal Employment Opportunity ("EEO") complaint on July 22, 2014. Id. ¶ 22. On August 22, 2014, Plaintiff filed an amended EEO complaint. Id. The Equal

Employment Opportunity Commission took no action on Plaintiff's complaints within the 180-day requirement. Id. Plaintiff filed this action against the DHS for age discrimination on June 18, 2015, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. ECF No. 1.

### C. Jurisdiction

Plaintiff's claims arise under federal statutes, therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, 29 U.S.C. § 663a(c) explicitly gives federal district courts jurisdiction over claims arising under the federal employer provision of the ADEA, 29 U.S.C. § 633a.

## II. MOTION TO DISMISS AND/OR STRIKE

The portion of the ADEA that applies to federal employers is 29 U.S.C. § 633a. It states in relevant part "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Section 633a further allows "[a]ny person aggrieved [to] bring a civil action in any Federal court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c).

Defendant's motion to dismiss and/or motion to strike revolves around two issues. ECF No. 14. First, Defendant argues compensatory damages are not available for ADEA claims against federal employers. Id. at 2. Second, Defendant argues Congress has not waived sovereign immunity for disparate impact claims against federal employers. Id.

### A. Legal Standards

#### 1. Dismissal Under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility

3

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

### 2. Dismissal Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am, 511 U.S. 375, 377 (1994).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  The plaintiff always bears the burden of establishing subject matter jurisdiction. Kokkonen, 511 U.S. at 377.

### 3. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

### B. Compensatory Damages

Defendant argues that Plaintiff cannot recover compensatory damages in a federal ADEA case. ECF No. 14 at 9.  In Ahlmeyer v. Nevada System of Higher Education, 555 F.3d 1051, 1059 (9th Cir. 2009), the Ninth Circuit held that "[c]ompensatory damages for pain and suffering and punitive damages are not available under the ADEA[.]"  "Relief under the ADEA is limited to 'judgments compelling employment, reinstatement, or promotion,' the recovery of unpaid minimum wages or overtime pay, and reasonable attorneys' fees and costs." Id. (citation omitted).

Plaintiff argues that the language of the statute is broad, and that "nothing in the statute forbids an award of compensatory damages." ECF No. 15 at 12.  But this argument is not sufficient to overcome binding precedent in this circuit.  Defendant correctly points out that courts in this circuit have recently recognized Ahlmeyer's holding in the section 633a context.  See

1  Walker v. U.S. Dep't of Commerce, No. 1:11-CV-01195 AWI, 2012 WL 1424495, at *6–7 (E.D.
2  Cal. Apr. 24, 2012) (dismissing with prejudice both "Plaintiffs' demands for punitive damages
3  under the ADEA" and "Plaintiffs' claims for liquidated damages and compensatory damages for
4  pain and suffering or emotional distress under the ADEA."); Offield v. Holder, No. 12-CV-03053-
5  JST, 2014 WL 1892433, at *18 (N.D. Cal. May 12, 2014) (holding "[d]efendant is entitled to
6  judgment against Plaintiff's non-wage, general, liquidated, and punitive damages claims" ).

7      Plaintiff's complaint alleges mental and emotional stress, as well as damages caused by the
8  loss of "thousands of dollars in home investments."  ECF No. 1 ¶¶ 16, 19, 21.  Ahlmeyer makes
9  clear that these damages are not available under the ADEA.  Likewise, because non-wage, general,
10  liquidated, and punitive damages are not available under the ADEA, Plaintiff's request for "other
11  damages" that arise under these damage theories is also foreclosed.

12      However, as Ahlmeyer notes, lost wages are available under the ADEA.  See also Walker,
13  2012 WL 1424495, at *6 ("'Nothing in the ADEA indicates an intent by Congress to permit the
14  recovery of damages beyond lost wages' in cases where the government has waived sovereign
15  immunity." (quoting Smith v. Office of Personnel Mgmt., 778 F.2d 258, 261 (5th Cir. 1985))).
16  Given that Plaintiff alleges he accepted his reassignment to a new TSA office, though, he has
17  failed to provide any facts that suggest he should be awarded lost wages.  Accordingly, any claims
18  for lost wages are dismissed without prejudice.  All other claims for damages are dismissed with
19  prejudice.

20      **C.**    **Sovereign Immunity and Disparate Impact Claims**

21      Defendant also contends that Plaintiff's case must be dismissed because the federal
22  government has, through the ADEA, only waived its sovereign immunity for disparate treatment
23  claims of discrimination, not disparate impact claims.  ECF No. 14 at 10.  "It is axiomatic that the
24  United States may not be sued without its consent and that the existence of consent is a
25  prerequisite for jurisdiction."  U.S. v. Mitchell, 463 U.S. 206, 212 (1983).   In Smith v. City of
26  Jackson, 544 U.S. 228 (2005), the Supreme Court held that disparate impact claims of
27  discrimination were available under the ADEA against private parties, but did not decide whether
28  the same was true against state parties.

The Ninth Circuit has addressed this question. In <u>Palmer v. United States</u>, 794 F.2d 534, 536 (9th Cir. 1986), the court explained that "[a] plaintiff alleging discrimination under the ADEA may proceed under either of two theories: disparate treatment or disparate impact." "Under the disparate treatment theory the employee must show discriminatory motive by the employer." <u>Id.</u> However, "[d]iscriminatory motive need not be shown under the disparate impact theory." <u>Id.</u> In <u>Palmer</u>, the Ninth Circuit considered an ADEA claim raised against the United States Forest Service, ultimately affirming the dismissal of the claim because the plaintiff failed to prove any discriminatory impact.

Defendant contends that the Court should not follow <u>Palmer</u> for several reasons. First, it argues that <u>Palmer</u> should be afforded little weight because the Ninth Circuit did not explicitly analyze the question of whether disparate impact claims are available. ECF No. 14 at 13. It is true that the <u>Palmer</u> decision does not include a detailed analysis of why the language of section 633a allows for disparate impact theories of discrimination. Nevertheless, it is clear that the Ninth Circuit considered the availability of disparate impact claims to be binding precedent in the circuit. The court cited multiple Ninth Circuit cases as support and endorsed the district court's decision to treat the plaintiff's argument as a disparate impact claim even though the plaintiff never identified it as such in the complaint. <u>Palmer</u>, 794 F.2d at 536, 538. Moreover, the question of whether the ADEA authorizes disparate impact claims against the government is a jurisdictional one, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. Proc. 12(h)(3). The Court can therefore safely assume that the Ninth Circuit, in <u>Palmer</u>, concluded that disparate impact claims were available to the plaintiff against a federal state defendant.

Second, Defendant contends that because <u>Palmer</u> pre-dates the Supreme Court's decision in <u>Smith v. City of Jackson</u>, it has not incorporated <u>Smith</u>'s "teachings" and is of questionable value. ECF No. 14 at 13. <u>Smith</u>, however, has little to teach on this subject because it was concerned with the availability of disparate impact claims against private parties, and thus with an entirely different section of the ADEA. Moreover, to the extent that <u>Smith</u> has anything of value to say about <u>Palmer</u>, it appears to approve of it. As support for its holding, the Supreme Court

6

noted that "for over two decades after our decision in Griggs, the Courts of Appeal uniformly interpreted the ADEA as authorizing recovery on a 'disparate-impact' theory in appropriate cases," and cited Palmer as an example in a footnote. Smith, 544 U.S. at 237 & n.8.  It seems unlikely that the Supreme Court would issue a decision counseling towards forbidding disparate impact claims against the government under the ADEA while simultaneously citing a Ninth Circuit case allowing those claims as support.

Third, Defendant argues that the weight of authority following the Supreme Court's decision in Smith foreclose the possibility of federal sector disparate impact claims.  ECF No. 14 at 14.  It cites to several district court cases from the District of Columbia.  Id. (citing to Allard v. Holder, 840 F. Supp. 2d 269 (D.D.C. 2012); Silver v. Leavitt, No. CIV.A. 05-0968 JDB, 2006 WL 626928; Anderson v. Duncan, 20 F. Supp. 3d 42  (D.D.C. 2013)).  Yet even Defendant's own cases, as well as many others in the D.C. Circuit, recognize that the case law is not settled. See, e.g., Anderson, 20 F. Supp. 3d at 58, 62 (D.D.C. 2013) (holding plaintiff's disparate impact claim is not cognizable, but recognizing that the Ninth and Tenth Circuits have "entertained claims of disparate impact against federal employers"); Aliotta v. Bair, 576 F. Supp. 2d 113, 127 n.7 (D.D.C. 2008) aff'd, 614 F.3d 556 (D.C. Cir. 2010) (describing that "[n]either the D.C. Circuit nor the Supreme Court has addressed whether ADEA disparate impact cases are legally cognizable against federal employers" and writing that the "[m]embers of the D.C. District Court remain divided on the issue.").  The post-Smith decisions cited by Defendant therefore offer little help to the Court.

Defendant is correct in stating that waivers of sovereign immunity cannot be implied.  However, "[t]he prohibition for federal employers is simple and sweeping . . . The statutory text does not limit or qualify the type of age discrimination that Congress prohibited for federal employers, or limit the theory or proof upon which a plaintiff may base a claim that a federal employer violated § 633a(a)." Breen v. Peters, 474 F. Supp. 2d 1, 6 (D.D.C. 2007).  The Court concludes, consistent with Palmer, that Plaintiff may bring a disparate impact claim against Defendant.  Accordingly, Defendant's motion to dismiss and/or strike Plaintiff's disparate impact claims is denied.

**CONCLUSION**

For the foregoing reasons, the Court dismisses with prejudice Plaintiff's claim for compensatory damages, as well as any claims for "other damages" in Plaintiff's complaint. The Court dismisses without prejudice any claims for lost wages to the extent they are included in "other damages." Lastly, the Court denies Defendant's motion to dismiss and/or strike Plaintiff's disparate impact claim.

IT IS SO ORDERED.

Dated: November 16, 2015

_____
JON S. TIGAR
United States District Judge