UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,<br><br>        Defendant. | Case No. 15-cv-02740-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**<br><br>Re: ECF No. 36 |

Before the Court is Defendant Secretary of the Department of Homeland Security's Motion to Dismiss and/or Strike portions of Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). ECF No. 36. The Court will deny the motion in part and grant it in part.

I. **BACKGROUND**

    A. **Factual History**

For the purpose of deciding this motion, the Court accepts as true the following factual allegations from Plaintiffs' First Amended Complaint. ECF No. 30 ("FAC"). Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994).

Plaintiffs K.H., C.V., W.L., and J.M. ("Plaintiffs K.H., et al.") are over 40 years of age and are Federal Air Marshals ("FAMs"). FAC ¶¶ 4-7. Plaintiffs are employed by the Transportation Security Administration ("TSA"), an agency within the Department of Homeland Security ("DHS"). Id. Plaintiffs Jeffrey Boyer, Brian Pierog, Donna Baxter, Karnel McMahan, Richard DeVivo, Gary McConaghy, and Kristen Pavkovich ("Plaintiffs Boyer, et. al.") are over 40 years of age and were FAMs in the Federal Air Marshal Service's ("FAMS") Pittsburgh Field Office. Id. ¶ 8.

The TSA targeted the Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa

Field Offices ("selected Field Offices") for closure. Id. ¶ 13. The TSA targeted these Field Offices because they had the highest percentage of older FAMs; about 90% of the FAMs in each selected Field Office were over 40 years of age. Id. ¶ 14. Although the TSA reassigned the FAMs to other Field Offices, the TSA made the moves extremely difficult, expensive, unpalatable, and problematic. Id. ¶ 17. These closures have caused, and will continue to cause, FAMs to suffer marital unrest, loss of money in home investments, and loss of the custody of their children. Id. ¶ 28. By making these moves challenging for the FAMs, the TSA constructively discharged the FAMs. Id. ¶ 17. The intent of the TSA in closing the selected Field Offices was to force older FAMs from federal service, as the TSA hoped the older FAMs would quit rather than accept mandatory office reassignments. Id. ¶ 15. It has been represented to the older FAMs that the TSA intended to hire two new FAMs to replace each older FAM. Id. ¶ 16. The TSA threatened to terminate the FAMs' employment if they refused to accept the reassignments. Id. ¶ 18.

Plaintiff K.H. worked in the Tampa Field Office and his performance was satisfactory or better. Id. ¶¶ 21-22. Yet, on August 19, 2014, K.H. received an email from his supervisor notifying Plaintiff of his reassignment with a memorandum attached from the Regional Director. Id. ¶ 20. The memorandum stated that K.H. had 10 days to decide whether to accept the reassignment and that if K.H. chose not to accept the reassignment, the TSA would terminate his employment. Id. Termination would make K.H. ineligible for certain benefits. Id. K.H. was reassigned to the San Francisco Field Office. Id. ¶ 21. K.H. experienced severe mental and emotional stress associated with the discriminatory closure of the Tampa Field Office. Id. ¶ 24. Prior to the closure, K.H. was constantly under stress about having to uproot himself from Florida and moving across the country to California. Id. K.H. missed out on vacations and placed his life on hold while awaiting the closure. Id. Moreover, K.H. constantly worries that the TSA will find a reason to terminate him from his position in the San Francisco Field Office, because K.H. knows that the TSA wants to terminate him due to his age. Id. The other named Plaintiffs all suffered similar non-compensable damages due to the closures. Id.

While Plaintiffs K.H., et al., accepted the reassignments, Plaintiffs Boyer, et al., were forced to resign or were terminated for refusing to accept the transfer. Id. ¶¶ 21, 26-27. But for

Plaintiffs' ages, they would not have been designated for reassignment from their Field Offices, forced to resign, or terminated. Id. ¶ 33. But for the high percentage of FAMs over 40 in the Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa Field Offices, the TSA would not have designated those Field Offices for closure. Id. ¶ 34. Plaintiffs allege that named plaintiffs and the similarly situated putative class members were all affected by a similar plan infected by discrimination. Id. ¶ 30.

Plaintiffs seeks all available relief under 29 U.S.C. § 626(b), "any relief [the] Court deems appropriate to restore Plaintiffs to the economic position they would have occupied but for the ADEA violations," and costs and attorney's fees. Id. at 6.

### B. Procedural History

Plaintiff K.H. filed an Equal Employment Opportunity ("EEO") complaint on July 22, 2014. Id. ¶ 23. One month later, Plaintiff filed an amended EEO complaint. Id. The Equal Employment Opportunity Commission took no action on Plaintiff's complaints within the 180-day requirement. Id. Plaintiff K.H. filed this claim for relief against the DHS for age discrimination on June 18, 2015, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. ECF No. 1.

Defendant filed a motion to dismiss and/or strike Plaintiff's Complaint on September 4, 2015. ECF No. 14. The Court granted in part and denied in part Defendant's motion. ECF No. 26. The Court dismissed without prejudice Plaintiff K.H.'s claims for lost wages because, "[g]iven that Plaintiff allege[d] he accepted his reassignment to a new TSA office, . . . he has failed to provide any facts that suggest he should be awarded lost wages." Id. at 5. The Court dismissed with prejudice Plaintiff's claim for compensatory damages, as well as any claims for "other damages" in Plaintiff's complaint. Id. The Court denied Defendant's motion to dismiss and/or strike Plaintiff's disparate impact claim. Id. at 5-8. Plaintiffs filed their operative FAC on January 15, 2016.

### C. Jurisdiction

Plaintiffs' claims arise under federal statutes, therefore, the Court has jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, 29 U.S.C. § 663a(c) explicitly gives federal district courts

3

jurisdiction over claims arising under the federal employer provision of the ADEA, 29 U.S.C. § 633a.

## II.   MOTION TO DISMISS AND/OR STRIKE

"The portion of the ADEA that applies to federal employers is 29 U.S.C. § 633a. It states in relevant part "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Section 633a further allows "[a]ny person aggrieved [to] bring a civil action in any Federal court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c).

Defendant's motion to dismiss and/or motion to strike revolves around three issues. ECF No. 36. First, Defendant argues that paragraphs 24 and 28 of the FAC request compensatory damages in violation of the Court's November 16, 2015 Order. Id. at 6. Second, Defendant argues that paragraph 3 of the FAC's Prayer for Damages also impermissibly requests compensatory damages in violation of the Court's Order. Id. Third, Defendant argues that Plaintiffs K.H., C.V., W.L., and J.M. cannot sustain a claim for lost wages in light of the Court's Order. Id.

### A.   Legal Standards

#### 1.   Dismissal Under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

4

### 2. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). "Motions to strike . . . 'are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic.'" New York City Employees' Ret. Sys., et al. v. Berry, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (quoting Neilson v. Union Bank of Cal., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)).

### B. Alleged Claim for Compensatory Damages in Paragraphs 24 and 28 of Plaintiffs' First Amended Complaint

Defendant argues that "paragraphs 24 and 28 [of Plaintiffs' FAC], to the extent they are relevant to [P]laintiffs' ADEA claims, are . . . aimed at recovering compensatory damages (e.g., emotional distress damages) and are inconsistent with the Court's November 16, 2015 Order." ECF No. 36 at 6. Therefore, Defendant argues that "[t]hose portions of the FAC should be once again dismissed or stricken." Id.

Plaintiffs argue that the "allegations [in paragraphs 24 and 28] are pertinent and material to Plaintiffs' ADEA disparate impact theory and there is nothing in those paragraphs suggesting Plaintiffs are asserting a claim for compensatory damages arising therefrom." ECF No. 38 at 11. In support of Plaintiffs' disparate impact theory, they allege that "both paragraphs discuss certain aspects of the impact that the Field Office closures had on [P]laintiff K.H. and other FAMs." Id. Plaintiffs further allege that "[a]s discovery proceeds, Plaintiffs will seek to confirm that the Field Office closures had a similar significantly adverse or disproportionate impact on the older workforce." Id.

The text of paragraphs 24 and 28 reads as follows:

> "24. The Defendant's actions have caused Plaintiff K.H. to suffer non-compensable damages, including severe and harmful mental and emotional stress

5

> associated with the discriminatory closure of the Tampa Field Office. Prior to the closure, Plaintiff K.H. was constantly under stress about having to uproot himself from Florida and moving across the country to California. Plaintiff K.H. missed out on vacations and placed his life on hold while awaiting the closure. Moreover, because Plaintiff K.H. knows that the TSA wants to rid him from its ranks because he is an older FAM, he constantly worries that the TSA will soon find a reason to terminate him from his position in the San Francisco Field Office. The remaining named Plaintiffs all suffered similar non-compensable damages due to the discrimination closures."

> "28. It is undisputable that FAMs over 40 years of age are less mobile and more tied to their communities than their younger counterparts. These discriminatorily-designed Field Office closures have caused, and will cause, older FAMs to uproot their families from communities they have long resided in, to lose thousands of dollars in home investments, and to lose the custody of their children. The discriminatory practice has caused, and will cause, marital unrest and the partition of once unified families."

ECF No. 30. As Plaintiffs correctly note, nothing in paragraphs 24 or 28 requests compensatory damages. In fact, Plaintiffs explicitly use the word "non-compensable" to describe these injuries. Further, paragraphs 24 and 28 describe the impact of the selected Field Office closures on K.M. and other FAMs, which is relevant to Plaintiffs' disparate impact theory. Accordingly, the Court denies defendant's motion to dismiss and/or strike paragraphs 24 and 28.

### C. Alleged Claim for Compensatory Damages in Paragraph 3 of Plaintiffs' Prayer for Relief

Defendant argues that "paragraph 3 of the Prayer for Relief seeks the recovery of compensatory damages and is inconsistent with the Court's November 16, 2015 Order." ECF No. 36. Plaintiffs argue that "[t]he paragraph merely requests any relief that <u>this Court deems appropriate</u>." ECF No. 38 at 11 (emphasis in original). Paragraph 3 of the Prayer for Relief provides: ""For any relief this Court deems appropriate to restore Plaintiffs to the economic position they would have occupied but for the ADEA violations." <u>Id.</u>

Plaintiffs' argument fails because the ADEA does not permit any other type of relief other than those claimed in paragraphs 2 and 4 of Plaintiffs' Prayer for Relief. "Relief under the ADEA is limited to judgments compelling employment, reinstatement, or promotion, the recovery of unpaid minimum wages or overtime pay, and reasonable attorneys' fees and costs." <u>Ahlmeyer v. Nevada System of Higher Education</u>, 555 F.3d 1051, 1059 (9th Cir. 2009) (citation omitted). In

paragraph 2 of Plaintiffs' Prayer for Relief, Plaintiffs claim "[a]ll available relief under 29 U.S.C. § 626(b), which authorizes district courts to grant ADEA claimants such legal or equitable relief as may be appropriate to effectuate the purposes of the act, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section, not to include compensatory damages . . ." FAC at 6.  In paragraph 4, Plaintiffs claim "costs and reasonable attorney's fees incurred with this lawsuit with interest theron." Id.  Therefore, paragraph 3 fails to claim cognizable relief under the ADEA because Plaintiffs have already claimed all possible relief available under the ADEA in paragraphs 2 and 4.  Plaintiffs do not explain what additional relief could possibly be recovered.  The Court dismisses paragraph 3 with prejudice, because it fails "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).[1]

### D. Lost Wages Claims of Plaintiffs K.H., C.V., W.L., and J.M.

Defendants argue that "Plaintiff K.H. continues to acknowledge that he accepted reassignement [sic] to a new TSA office, but fails to provide any facts that explain how, in light of that fact, he lost wages." ECF No. 36 at 6.  Defendant further alleges that "[t]he lost wages claims of new plaintiffs C.V., W.L. and J.M. are similarly deficient." Id.

Plaintiffs argue that "simply accepting an offer of reassigned employment in a different geographic area, does not mean an employee suffers no lost wages.  The impact of a forced move, in some cases across the country, for active duty FAMs and their families, and the attendant disruption and impact on their working schedules, clearly creates a basis for a lost wage claim as is evident in this case." ECF No. 38 at 12.  Plaintiffs rely on a decision from the Ninth Circuit for the proposition that "[t]he ingredients of a back pay award should include fringe benefits such as vacation and sick pay." Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1158 (9th Cir. 2001).

Even if this is true, Plaintiffs do not allege that they have lost fringe benefits such as

---

[1] Because Defendants have not demonstrated cause to strike this paragraph, the motion to strike is denied.

vacation or sick pay as a result of the alleged ADEA violations. Instead, they allege only generally that they "suffered compensable damages in the form of lost wages and the benefits associated with those lost wages due to the discriminatory closure[s]." FAC ¶¶ 25-27. Moreover, Plaintiffs submit as an exhibit to their opposing brief a proposed Second Amended Complaint that includes additional allegations that the Plaintiffs K.H., et al., were forced to use earned leave hours as a result of the alleged closures. ECF No. 38 at 19, 22-23. Defendants state in their Reply that Plaintiffs should amend their lost wage claims as proposed. ECF No. 39 at 2-3.

The Court concludes that Plaintiffs K.H., et al., have failed to plead sufficient facts to sustain a claim for lost wages and dismisses without prejudice the lost wage claims of Plaintiffs K.H., C.V., W.L., and J.M.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motion to dismiss and/or strike paragraph 24 and 28 of Plaintiffs' FAC. The Court dismisses with prejudice Plaintiffs' claim for "any relief that this Court deems appropriate" in paragraph 3 of the FAC's Prayer for Relief. Lastly, the Court dismisses without prejudice the lost wages claims of Plaintiffs K.H., C.V., W.L., and J.M. Any amended complaint should be filed within 14 days of the date of this order.

IT IS SO ORDERED.

Dated: April 26, 2016

JON S. TIGAR
United States District Judge