UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H., et al., <br><br>                Plaintiffs, <br><br>        v. <br><br> SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, <br><br>                Defendant. | Case No.  15-cv-02740-JST <br><br> **ORDER GRANTING MOTION TO APPROVE NOTICE OF COLLECTIVE ACTION AND TO CONDITIONALLY CERTIFY CLASS** <br><br> Re: ECF No. 43 |

Before the Court is Plaintiffs' Motion to Approve Notice of Collective Action and to Conditionally Certify Class, pursuant to 29 U.S.C. § 216(b).  ECF No. 43.  Defendant does not oppose the motion.  ECF No. 43.  As set forth below, the motion is granted.

**I.    BACKGROUND**

Plaintiff K.H. filed this action against Defendant Secretary of the Department of Homeland Security ("DHS"), on June 18, 2015.  ECF No. 1.  On January 15, 2016, Plaintiffs filed their First Amended Complaint adding numerous additional plaintiffs.  A Second Amended Complaint was filed on May 11, 2016.  ECF No. 50 ("SAC").

**A.    Plaintiffs' Allegations**

Plaintiffs K.H., C.V., W.L., and J.M. ("Plaintiffs K.H., et al.") are over 40 years of age and are Federal Air Marshals ("FAMs"). SAC ¶¶ 4-7.  Plaintiffs are employed by the Transportation Security Administration ("TSA"), an agency within the Department of Homeland Security.  Id. Plaintiffs Jeffrey Boyer, Brian Pierog, Donna Baxter, Karnel McMahan, Richard DeVivo, Gary McConaghy, and Kristen Pavkovich ("Plaintiffs Boyer, et. al.") are over 40 years of age and were FAMs in the Federal Air Marshal Service's ("FAMS") Pittsburgh Field Office.  Id. ¶ 8.

The TSA targeted the Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa Field Offices ("selected Field Offices") for closure.  Id. ¶ 13.  The TSA targeted these Field

1    Offices because they had the highest percentage of older FAMs; about 90% of the FAMs in each
2    selected Field Office were over 40 years of age. Id. ¶ 14. Although the TSA reassigned the FAMs
3    to other Field Offices, the TSA is making the moves extremely difficult, expensive, unpalatable,
4    and problematic. Id. ¶ 17. Several Plaintiffs were forced to use earned leave as a result of the
5    office closures and others were forced to eventually resign. Id. ¶¶ 25-29. By making these moves
6    challenging for the FAMs, the TSA constructively discharged the FAMs. Id. ¶ 17. The intent of
7    the TSA in closing the selected Field Offices was to force older FAMs from federal service, as the
8    TSA hoped the older FAMs would quit rather than accept mandatory office reassignments. Id. ¶
9    15. It has been represented to the older FAMs that the TSA intended to hire two new FAMs to
10   replace each older FAM. Id. ¶ 16. The TSA threatened to terminate the FAMs' employment if
11   they refused to accept the reassignments. Id. ¶ 18.

12       Plaintiff K.H. worked in the Tampa Field Office and his performance was satisfactory or
13   better. Id. ¶¶ 21-22. Yet, on August 19, 2014, K.H. received an email from his supervisor
14   notifying Plaintiff of his reassignment with a memorandum attached from the Regional Director.
15   Id. ¶ 20. The memorandum stated that K.H. had 10 days to decide whether to accept the
16   reassignment and that if K.H. chose not to accept the reassignment, the TSA would terminate his
17   employment. Id. Termination would make K.H. ineligible for certain benefits. Id. K.H. was
18   reassigned to the San Francisco Field Office. Id. ¶ 21. K.H. experienced severe mental and
19   emotional stress associated with the discriminatory closure of the Tampa Field Office. Id. ¶ 24.
20   Prior to the closure, K.H. was constantly under stress about having to uproot himself from Florida
21   and moving across the country to California. Id. K.H. missed out on vacations and placed his life
22   on hold while awaiting the closure. Id. Moreover, K.H. constantly worries that the TSA will find
23   a reason to terminate him from his position in the San Francisco Field Office, because K.H. knows
24   that the TSA wants to terminate him due to his age. Id. The other named Plaintiffs all suffered
25   similar non-compensable damages due to the closures. Id.

26       But for Plaintiffs' ages, they would not have been designated for reassignment from their
27   Field Offices, forced to resign, or terminated. Id. ¶ 35. But for the high percentage of FAMs over
28   40 in the Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa Field Offices, the

United States District Court
Northern District of California

1   TSA would not have designated those Field Offices for closure.  Id. ¶ 36.  Plaintiffs allege that
2   named plaintiffs and the similarly situated putative class members were all affected by a similar
3   plan infected by discrimination.  Id. ¶ 32.  Plaintiffs seeks all available relief under 29 U.S.C.
4   § 626(b) and costs and attorney's fees.  Id. at 6.

### B. Procedural History

Plaintiff K.H. filed an Equal Employment Opportunity ("EEO") complaint on July 22, 2014.  Id. ¶ 23.  One month later, Plaintiff filed an amended EEO complaint.  Id.  The Equal Employment Opportunity Commission took no action on Plaintiff's complaints within the 180-day requirement.  Id.  Plaintiff K.H. filed this claim for relief against the DHS for age discrimination on June 18, 2015, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  ECF No. 1.

Defendant filed a motion to dismiss and/or strike Plaintiff's Complaint on September 4, 2015.  ECF No. 14.  The Court granted in part and denied in part Defendant's motion.  ECF No. 26.  The Court dismissed without prejudice Plaintiff K.H.'s claims for lost wages because, "[g]iven that Plaintiff allege[d] he accepted his reassignment to a new TSA office, . . . he has failed to provide any facts that suggest he should be awarded lost wages."  Id. at 5.  The Court dismissed with prejudice Plaintiff's claim for compensatory damages, as well as any claims for "other damages" in Plaintiff's complaint.  Id.  The Court denied Defendant's motion to dismiss and/or strike Plaintiff's disparate impact claim.  Id. at 5-8.  Plaintiffs filed their operative FAC on January 15, 2016.  DHS filed a second motion to dismiss on February 5, 2016.  ECF No. 36.  The motion was granted in part and denied in part on April 26, 2016.  ECF No. 43.

Plaintiffs filed the instant motion to approve notice and to conditionally certify the class on April 15, 2016.  ECF No. 43.  DHS submitted their statement of non-opposition on April 26, 2016.  ECF No. 44.

## II. LEGAL STANDARD

The Fair Labor Standards Act provides that actions against employers for violation of its overtime and minimum wage requirements may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves

3

and other employees similarly situated." 29 U.S.C. § 216(b).  A suit brought on behalf of other employees is known as a "collective action," a type of suit that is "fundamentally different" from class actions.  Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1527 (2013) (citing Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169–70 (1989)).  For example, unlike in class actions, members of a collective action must file a "consent to sue" letter with the court in which the action is brought – creating an opt-in class.  29 U.S.C. 216(b).  Also different is that "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action.  The sole consequence of conditional certification is the sending of court-approved written notice to employees."  Id. (citing Hoffmann-LaRoche, 493 U.S. at 171–72.

Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources."  Hoffman-LaRoche, 493 U.S. at 170 (discussing collective action provision, 29 U.S.C. § 216(b), in context of ADEA claims).  The judicial system also benefits through the "efficient resolution in one proceeding of common issues of law and fact arising from the same" unlawful activity.  Id.

The majority of courts, including this district, apply a two-step approach to certification of collective actions.  See, e.g., Lewis v. Wells Fargo & Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (citing Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001) (comparing approaches and adopting two-step approach)); Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (applying two-step approach); Wong v. HSBC Mortgage Corp. (USA), No. 07-cv-2446-MMC, 2008 WL 753889, at *2 (N.D. Cal. Mar. 19, 2008) (same); Flores v. Velocity Exp., Inc., No. 12-CV-05790-JST, 2013 WL 2468362, at *5 (N.D. Cal. June 7, 2013) (same).

In the first step, alternatively called the "notice stage" and "conditional certification," courts determine whether the plaintiff employees are sufficiently "similarly situated" to justify sending notice of the action to potential class members.  In making that determination, "the court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan."  Lewis, 669 F. Supp. 2d at 1127 (quotation omitted).  "Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and

4

typically results in conditional class certification." Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004). See also Adams v. Inter–Con Sec. Sys., Inc., 242 F.R.D. 530, 536 (N.D. Cal. Apr.11, 2007) (recognizing "lenient" standard "based on the pleadings and affidavits submitted by the parties").

Only after notice is sent and discovery has closed do district courts move on to the second step, which requires a determination, usually prompted by a motion for decertification by the employer, whether the employees are "similarly situated" as measured by a "stricter standard." Id. (quoting Thiessen, 267 F.3d at 1102). That determination involves several factors, including the disparate factual and employment settings of the individual employees; the defenses available to the employer that apply to different employees differently; and fairness and procedural considerations. See Leuthold, 224 F.R.D. at 467; Wong, 2008 WL 753889, at *2. Even then, the standard courts apply is different, and easier to satisfy, than the requirements for a class action certified under Federal Rule of Civil Procedure 23(b)(3). Lewis, 669 F. Supp. 2d at 1127 (quoting Wertheim v. Arizona, No. 92-cv-453-PHX, 1993 WL 603552, *1 (D. Ariz. 1993) (requiring only "that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.").

## III. DISCUSSION

The Court concludes that conditional certification and approval of the proposed notice are both appropriate.

### A. Conditional Certification

Plaintiffs assert that conditional certification is appropriate in light of their allegations that the putative class members "(1) are FAMs employed by Defendant; (2) performed the same duties; (3) worked in the Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, or Tampa Field Office; and (4) were subjected to the FAMS' decision to close their respective Field Offices." ECF No. 43 at 7. DHS does not oppose conditional certification.

The Court concludes that Plaintiffs have offered substantial allegations that the putative class members were all harmed by a policy or decision that resulted in the closing of the TSA offices at which they worked. These allegations sufficiently support the conclusion that the

putative class members are similarly situated, and that as a result, the class members will share a number of common issues of law and fact and the case will benefit from resolution as a collective action rather than through individual cases.

### B. Notice

The FLSA requires the court to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)). Courts "must be scrupulous to respect judicial neutrality" and to "avoid even the appearance of judicial endorsement of the merits of the action." Id. at 540.

Here, again, DHS does not oppose the proposed notice to be distributed to the putative class, nor the process for distributing notice to the class members. The notice identifies the case and pertinent case information, describes the factual allegations offered by both sides in the case, and identifies the options available to the recipients of the notice. ECF No. 43 at 18. In addition, the notice states, in clear bond font, that the court has not yet ruled on the merits of the case. Accordingly, the Court approves the proposed notice. The Court also approves the proposed consent to join form. Finally, the Court approves the notice procedure proposed by Plaintiff, which involves mailing the notice to all class members using addresses provided by Defendant from its employee database, and posting the notice at the workplaces of class members. ECF No. 43 at 9.

## CONCLUSION

In light of the foregoing reasons, and pursuant to the notice procedure proposed by Plaintiffs, the Court hereby orders as follows:

1. This action is conditionally certified as a representative collective action, pursuant to 29 U.S.C. § 216(b). The class shall be defined as follows:

> All Federal Air Marshals who were impacted by the closure of the Federal Air Marshal Service's Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa offices and who were over 40 years of age at the time the decision to close the offices was made.

2. Within 30 days of the date of this order, Defendant shall produce to Plaintiffs a list of

the names and last known addresses of all members of the class as of the date of this order.

3. Within 10 days of receiving the list of names and addresses from Defendant, Plaintiffs shall mail Notice and Consent to Join forms to all members whose information is provided in the class list. Within 10 days of sending the list of names and addresses to Plaintiffs, Defendant shall post an updated Notice and provide multiple copies of Consent to Join forms in all field offices, in a place visible and accessible to all Federal Air Marshals.

4. If any notice is returned as undeliverable, Plaintiffs will obtain the best available forwarding address using the National Change of Address database or equivalent, and re-mail the notice to that address within 5 days.

5. The members of the class shall have 60 days from the date of mailing to postmark or otherwise send their Consent to Join forms.

6. A further Case Management Conference is scheduled on January 18, 2017 at 2:00 p.m. A Joint Case Management Statement is due on January 9, 2017.

IT IS SO ORDERED.

Dated:  July 18, 2016

_____
JON S. TIGAR
United States District Judge