NICHOLAS M. WIECZOREK
California Bar No. 110170
JEREMY J. THOMPSON  (*Pro Hac Admission*)
Nevada Bar No. 12503
**CLARK HILL PLLC**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone:    (702) 862-8300
Facsimile:     (702) 862-8400
Email:  NWieczorek@clarkhill.com
Email:  JThompson@clarkhill.com

ERNEST B. ORSATTI
PA Bar No. 19891  (*Pro Hac Admission*)
WILLIAM F. WARD
PA Bar No. 25266 (*Pro Hac Admission*)
**ROTHMAN GORDON, P.C.**
310 Grant Street, Third Floor
Pittsburgh, PA 15219
Telephone:    (412) 338-1145
Email:  eborsatti@rothmangordon.com
Email:  wfward@rothmangordon.com
*Attorneys for Plaintiffs*

ALEX G. TSE (CABN 152348)
Acting United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California  94102-3495
Telephone:    (415) 436-4365
Facsimile:     (415) 436-7234
Email:  wendy.garbers@usdoj.gov
*Attorneys for Defendants*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| K. H., C.V., W.L., J.M., JEFFREY BOYER, BRIAN PIEROG, DONNA BAXTER, RICHARD DEVIVO, and GARY MCCONAGHY, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Case No.:      3:15-cv-02740-JST <br><br> **JOINT NOTICE OF MOTION AND MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF COLLECTIVE ACTION AGREEMENT** <br><br> Date: July 12, 2018 <br> Time: 2:00 p.m. <br> The Honorable Jon S. Tigar |

# TABLE OF CONTENTS

NOTICE OF MOTION.................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

I.    INTRODUCTION. ............................................................................................................ 2

II.   FACTS. .............................................................................................................................. 4

III.  ARGUMENT. .................................................................................................................... 4

      A.    Legal Standard. ...................................................................................................... 4

IV.   TERMS OF THE CLASS SETTLEMENT. ...................................................................... 6

V.    ATTORNEYS' FEES ........................................................................................................ 7

VI.   THE SETTLEMENT MERITS FINAL APPROVAL ...................................................... 8

      A.    The Class Action Settlement Process .................................................................... 8

      B.    The Settlement Meets the Ninth Circuit's Standards for Final Approval................ 9

      C.    The Settlement Is Substantively Fair Because It Provides Significant
            Benefits in Exchange for The Compromise of Disputed Claims............................ 10

      D.    The Settlement Is Procedurally Fair as the Product of Good Faith,
            Informed, and Arm's-Length Negotiations............................................................ 10

      E.    Uniformly, the Class Members Approve the Settlement Terms............................. 10

VII.  CONCLUSION................................................................................................................... 11

CERTIFICATE OF MAILING......................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions* §11:41 (4th ed. 2002) ........................................................................................................................8

*Adams v. Inter–Con Security Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007) .............................5

*Chun-Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 852 (N.D. Cal. 2010)............................10

*Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal. 1991) ............................3

*Churchill Vill.*, L.L. C. v. GE, 361 F.3d 566, 577 (9th Cir. 2004) ...................................................10

*Class Plaintiffs v. City of Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992) ........................................8

*Ellis v. Naval Air Rework Facility*; 87 F.R.D. 15, 18 (N.D. Cal. 1980) ..........................................9

*Flores v. Velocity Express, Inc.*, 12-CV-05790-JST, 2013 WL 2468362, at *5 (N.D. Cal. June 7, 2013) ................................................................................................5

*Gerner v. State Farm Mut. Auto. Ins. Co.,* No. C081365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ............................................................11

*Glass v. UBS Fin. Serv., Inc.,* No. C-06-4068-MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) .........................................................................................10

*Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016)............................8

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ....................................................9

*In re Rambus Inc. Derivative Litig.,* No. C-06-3515-JF, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing Fed. R. Civ. P. 23(e) ................................................9

*In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008) ..................................................8

*Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013) ......................................................................................................3

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)..........................................................9

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) ..............................5

*Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015)..................................3

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)..........................4

*Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 618-31 (W.D. Tex. 2005) .....................................................................................................................6

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C>D> Cal. 2004) ...................................................................................................................11

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).............................3, 6

*Nobles v. MBNA Corp.,* No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009)...........................................................................................................9

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)..........................10

*Picerni v. Bilingual Seit & Preschool, Inc.,* 925 F.Supp.2d 368, 375 (E.D.N.Y. 2013) ..............................................................................................................6

*Riker v. Gibbons,* No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010)..............................................................................................11

*Sperling, supra,* 493 U.S. at 170..............................................................................................4

*Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003) ...............................................9

*Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) .............................................................................10

**Statutes**

29 U.S.C. § 216(b) .........................................................................................................3, 4

49 CFR 2................................................................................................................................2

FRCP 23............................................................................................................3, 4, 5, 8

FRCP 41 ...............................................................................................................................6

**Other Authorities**

The Manual for Complex Litigation (Fourth) (2004) .......................................................8

Joint Notice of Motion and Motion and Memorandum in Support of Final Approval of
Collective Action Agreement
Case No.  3:15-cv-02740-JST

1

## NOTICE OF THE MOTION AND MOTION

2    PLEASE TAKE NOTICE that on **July 12, 2018** at **2:00 p.m.**, or soon thereafter as the

3    matter may be heard in Courtroom 9, 19th Floor, of the United States District Court for the

4    Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California,

5    plaintiffs' counsel, on behalf of the opt-in Federal Air Marshal plaintiffs, and defendant will and

6    hereby do move the Court for an order granting final approval of the Collective Action Settlement

7    Agreement and Release.

8    As discussed in the accompanying Memorandum of Points and Authorities, the parties

9    have reached an agreement which has been approved by all 185 opt-in plaintiffs.  The parties and

10   counsel thus respectfully request that the Court grant final approval to the settlement.

11   This joint motion is based on this notice, the Memorandum of Points and Authorities

12   submitted herewith, the declarations attached hereto, the pleadings, records, and files in this

13   action, and such other written or oral argument as may be presented at or before the time this

14   motion is taken under submission by the Court.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

2

**I.      INTRODUCTION.**

3       On June 18, 2015 plaintiff K.H., then a Federal Air Marshal ("FAM"), filed a complaint

4   on behalf of himself and those similarly situated against the Secretary of the Department of

5   Homeland Security.  The complaint was subsequently amended to add additional plaintiffs and

6   revise various allegations included in the original complaint.  The second amended complaint

7   alleged that the Transportation Security Administration targeted the Federal Air Marshal

8   Service's Field Offices in Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa for

9   closure because those Field Offices had the highest percentage of older FAMs.  Hence, the

10   complaint alleged that the office closure decision was driven by age bias and discriminatory

11   motive rather than risk-based analysis or security considerations.

12       Following a hearing on June 9, 2016, this Court granted the plaintiffs' motion to approve

13   notice of the collective action and to conditionally certify the class (ECF 56).  Discovery

14   continued through 2016 and 2017.  Following conclusion of discovery, and before the trial

15   scheduling, the parties participated in a settlement conference before Magistrate Judge Laurel

16   Beeler, which was conducted on February 23, 2018.  As a result of that settlement conference, the

17   parties entered into a conditional agreement to settle all issues pertaining to this lawsuit, and to

18   enter into a written settlement agreement, a redacted copy of which is attached hereto as Exhibit

19   1.[1]

20       As of the date of the settlement conference, the class consisted of 185 party plaintiffs who

21   had previously opted into the case.  One of the conditions of the settlement was that all 185

22   individual plaintiffs had to personally sign the settlement agreement and agree to the terms and

23   distributions contained therein.  For purposes of this motion, it is significant that, in fact, all 185

24
25
26
27
28

---

[1] The names of the current Federal Air Marshals are Sensitive Security Information ("SSI"), as defined by federal regulation 49 C.F.R. § 1520.5. The Transportation Security Administration has a SSI committee that reviews court filings for SSI redaction. See generally 49 C.F.R. § 1520.5. The SSI committee is in the process of preparing a more narrowly-redacted version of the settlement agreement for public filing, and should have it ready within the next two weeks. Once the official SSI redaction is available, defendant will file the unredacted copy of the settlement agreement under seal (in accordance with the Court's procedures) and will publicly file the official SSI-redacted version.

2

1 | party plaintiffs have agreed to the terms of this agreement and have signed the settlement

2 | agreement indicating their acceptance of the terms and conditions contained within it.

3 |    Plaintiffs, counsel for plaintiffs and defendant jointly submit this motion for approval of

4 | the collective class action settlement agreement.  Unlike many class settlements governed by

5 | Federal Rule of Civil Procedure Rule 23, in this case there are no absent class members whose

6 | interests the Court must be concerned with.  All plaintiffs have agreed to the settlement, and

7 | accordingly there is strong support for the Court to approve the terms of this agreement in light of

8 | this universal approval by the class members.

9 |    The terms of the settlement agreement, which includes an award of 56 hours of leave to

10 | active FAMs and a payment of $1,500 to former FAMs, factored in the risks and contingencies to

11 | plaintiffs should this matter proceed to trial.  The defendant took an aggressive position with

12 | respect to liability in this case, significantly challenging allegations of age discrimination.  In fact,

13 | defendant submits that there is substantial evidence to demonstrate that the office closure decision

14 | was based on risk assessment, not age discrimination, and that plaintiffs would recover nothing

15 | were this matter to go to trial.  For plaintiffs, recognition was given to the fact that even if liability

16 | was determined, there was a question as to the nature and extent of available damages and the

17 | extent to which individual class members had lost pay as a result of the closure order.  All

18 | plaintiffs are receiving significant compensation in light of the factual background of this matter.

19 |    Although the caselaw is less than pellucid, it appears to the defendant government that

20 | Court approval is required for this settlement, and the parties thus request that the Court approve

21 | this settlement.

22 |    This action is a "collective action," governed by the procedures set forth in Section 16(b)

23 | of the Fair Labor Standards Act ("FLSA").  *See Church v. Consol. Freightways, Inc.*, 137 F.R.D.

24 | 294, 298-99 (N.D. Cal. 1991) ("[T]he ADEA shall be enforced using certain of the powers,

25 | remedies, and procedures of the FLSA.  A special kind of 'opt-in' class action may be brought

26 | under one of the FLSA incorporated provisions, 29 U.S.C. § 216(b)[.]").  According to caselaw in

27 | this District, "settlements of collective action claims under the FLSA . . . require court

28 | approval." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *see also Jones*

1   party plaintiffs have agreed to the terms of this agreement and have signed the settlement

2   agreement indicating their acceptance of the terms and conditions contained within it.

3          Plaintiffs, counsel for plaintiffs and defendant jointly submit this motion for approval of

4   the collective class action settlement agreement.  Unlike many class settlements governed by

5   Federal Rule of Civil Procedure Rule 23, in this case there are no absent class members whose

6   interests the Court must be concerned with.  All plaintiffs have agreed to the settlement, and

7   accordingly there is strong support for the Court to approve the terms of this agreement in light of

8   this universal approval by the class members.

9          The terms of the settlement agreement, which includes an award of 56 hours of leave to

10  active FAMs and a payment of $1,500 to former FAMs, factored in the risks and contingencies to

11  plaintiffs should this matter proceed to trial.  The defendant took an aggressive position with

12  respect to liability in this case, significantly challenging allegations of age discrimination.  In fact,

13  defendant submits that there is substantial evidence to demonstrate that the office closure decision

14  was based on risk assessment, not age discrimination, and that plaintiffs would recover nothing

15  were this matter to go to trial.  For plaintiffs, recognition was given to the fact that even if liability

16  was determined, there was a question as to the nature and extent of available damages and the

17  extent to which individual class members had lost pay as a result of the closure order.  All

18  plaintiffs are receiving significant compensation in light of the factual background of this matter.

19         Although the caselaw is less than pellucid, it appears to the defendant government that

20  Court approval is required for this settlement, and the parties thus request that the Court approve

21  this settlement.

22         This action is a "collective action," governed by the procedures set forth in Section 16(b)

23  of the Fair Labor Standards Act ("FLSA").  *See Church v. Consol. Freightways, Inc.*, 137 F.R.D.

24  294, 298-99 (N.D. Cal. 1991) ("[T]he ADEA shall be enforced using certain of the powers,

25  remedies, and procedures of the FLSA.  A special kind of 'opt-in' class action may be brought

26  under one of the FLSA incorporated provisions, 29 U.S.C. § 216(b)[.]").  According to caselaw in

27  this District, "settlements of collective action claims under the FLSA . . . require court

28  approval." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *see also Jones*

3

1    *v. Agilysys, Inc.*, No. C 12-03516 SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013)

2    ("Settlements of private collective action claims under the FLSA also require court approval.");

3    *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015) ("The trend among

4    district courts is nonetheless to continue subjecting FLSA settlements to judicial scrutiny.").

5         Accordingly, plaintiffs, counsel for plaintiffs and defendant respectfully request that the

6    Court grant this motion and approve the settlement.

7    **II.     FACTS.**

8         As set forth above, plaintiffs allege that the Transportation Security Administration

9    ("TSA") targeted the Federal Air Marshal Service's ("FAMS") Field Offices in Cincinnati,

10   Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa for closure because those Field Offices

11   have the highest percentage of older FAMs. FAC ¶¶ 13-14. Plaintiffs contend that it is/was the

12   TSA's intent to purge older FAMs from its workforce and/or that the discriminatory office

13   closures had/have a disparate impact on the TSA's older workforce. FAC ¶¶ 15-16.

14         All opt-in plaintiffs were over 40 years of age at the time the closure decision was made.

15         Defendant contends that plaintiffs lack any real evidence disputing that FAMS made the

16   closure decision for risk-based and efficiency reasons, and would present substantial evidence

17   documenting the risk-based reasons for the closure decision at trial. Defendant also pointed out

18   that plaintiffs could not dispute that there was only a slightly-over-three-year age difference

19   between the average age of the FAMS at the closed and non-closed offices. This Court

20   previously held this "3-year age difference reported by plaintiffs' expert is insufficient to support

21   an inference of discrimination," and granted summary judgment in favor of defendant on

22   plaintiffs' disparate impact claims. (ECF 103 at 9). Defendant submits that it is thus highly

23   doubtful that the plaintiffs would prevail at trial, which would necessarily rely on the theory that

24   the FAMS decided to close six offices in order to drive down the average age of the entire FAMS

25   workforce by three years.

26    **III.    ARGUMENT.**

27         **A.     Legal Standard.**

28         The class action format under the ADEA is not guided by FRCP 23, but instead, the

4

Joint Notice of Motion and Motion and Memorandum in Support of Final Approval of
Collective Action Agreement
Case No. 3:15-cv-02740-JST

1 standards of 29 U.S.C. § 216(b) are utilized which allows employees to bring a collective age

2 discrimination action "on behalf of themselves and other employees similarly situated." *Sperling*,

3 *supra,* 493 U.S. at 170; *see Flores v. Velocity Express, Inc.*, 12-CV-05790-JST, 2013 WL

4 2468362, at *5 (N.D. Cal. June 7, 2013) (J. Tigar).   In contrast to FRCP 23, which contains an

5 "opt-out" provision, Section 216(b) contains an "opt-in" provision that prohibits any employee

6 from being "a party plaintiff to any such action unless he gives his consent in writing to become

7 such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §

8 216(b); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).   The

9 determination of whether a collective action under FLSA is appropriate is within the Court's

10 discretion. *See Adams v. Inter–Con Security Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007).

11          By order dated July 18, 2016, this Court granted the motion to approve notice of collective

12 action and to conditionally certify class.  Accordingly, notice to all similarly situated FAMS was

13 posted throughout the Agency Field Offices, and ultimately a total of 194 class plaintiffs either

14 opted in or joined this litigation.   The parties thereafter engaged in intensive discovery and

15 ultimately settlement discussions.  Near the conclusion of discovery, during which 10 plaintiffs

16 were either dismissed from the suit or withdrew their claims, settlement talks began and a court-

17 ordered settlement conference took place on February 23, 2018 before Magistrate Judge Laurel

18 Beeler.  The settlement talks resulted in a conditional settlement agreement.  Specifically, the

19 settlement fairly compensates affected current or separated Federal Air Marshal class members

20 with valuable consideration consisting either of restored leave time for the current FAM

21 employees or cash payments for FAMs who separated from the service after the date on which

22 the six subject offices closed.     Importantly, all 185 named class plaintiffs have signed the

23 settlement agreement, indicating their acceptance of the terms and conditions and agreeing with

24 the distributions and recitals therein.   For these reasons, as detailed further below, plaintiffs,

25 counsel for plaintiffs and counsel for defendant respectfully request the approval of the settlement

26 as fair, adequate and reasonable to the class, under prevailing jurisprudence.

27          Within the context of a lawsuit brought directly by employees against their employer

28 under Section 216(b) to recover back wages for FLSA violations, and upon consideration of

5

1    whether the proposed settlement is fair, the District Court may enter a stipulated judgment

2    approving the agreement and dismissing the action. *Lynn's Food Stores, Inc. v. United States*,

3    679 F.2d 1350, 1353 (11th Cir. 1982). Approval is appropriate upon demonstrating that (1) the

4    litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all

5    parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees.

6    *Id.*, 679 F.2d at 1354. Upon consideration of a motion to approve a settlement in an FLSA

7    matter, courts have questioned whether judicial approval of FLSA settlements is required or even

8    appropriate, observing that parties may, with certain exceptions, manage the resolution of their

9    cases independent of judicial intervention under application of FRCP 41. *See Picerni v. Bilingual*

10   *Seit & Preschool, Inc.,* 925 F.Supp.2d 368, 375 (E.D.N.Y. 2013); *Martinez v. Bohls Bearing*

11   *Equipment Co.*, 361 F.Supp.2d 608, 618-31 (W.D. Tex. 2005). Because the issue is still under

12   development, and there is caselaw in this District indicating that approval is required, the parties

13   have submitted this motion for Court approval of the settlement of this collection action. *See Nen*

14   *Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014) ("[S]ettlements of collective

15   action claims under the FLSA . . . require court approval.").

16   IV.    TERMS OF THE CLASS SETTLEMENT.

17         The Settlement provides substantial benefits to current and former Federal Air Marshals.

18   The parties were ordered to a settlement conference by this Court which was conducted on

19   February 23, 2018.   Magistrate Judge Laurel Beeler orchestrated a day-long settlement

20   discussion, resulting in the conditional settlement agreement which has now been approved by all

21   opt-in plaintiffs.

22         Pursuant to the stipulated settlement agreement and proposed order, attached hereto as

23   Exhibit 1, class-wide settlement consideration will consist of either:

24         1.   For all class members who have separated from the Federal Air Marshal Service as of

25              the date of execution of the agreement, a cash payment of $1,500.00. There shall be

26              no withholding from this amount. Checks will be made payable to each individual

27              plaintiff and mailed to plaintiffs in care of class counsel.

28   . . . . .

6

Joint Notice of Motion and Motion and Memorandum in Support of Final Approval of
Collective Action Agreement
Case No.  3:15-cv-02740-JST

2. Each plaintiff who as of the date of execution of the agreement remained employed with the Federal Air Marshal Service will receive seven additional days of leave credited to their Federal Service records.  This will be reflected as 56 hours of restored annual leave in the Federal Air Marshals Service's timekeeping system.  The leave will be managed in accordance with TSA policy and may be carried over for use through the end of 2019.

## V.    ATTORNEYS' FEES

None of the settlement benefits for Class Members will be reduced to pay attorneys' fees or to reimburse expenses of Settlement Class Counsel.  Defendant will pay attorneys' fees and costs separately from, and in addition to, the Settlement benefits to Class Members.

Further, the attorneys' fees component of the settlement agreement is fair and reasonable. The fees are significantly discounted and are in proportion with plaintiffs' recovery.  In addition, plaintiffs' counsel devoted hundreds of hours of work to this matter, which included but was not limited to: opposing multiple motions to dismiss, requesting and obtaining conditional certification, and opposing a summary judgment motion. Discovery in this matter was also significant and costly. The parties took approximately 28 depositions in various states across the United States and plaintiffs' counsel reviewed over 40,000 pages of documents the defendant produced.  Plaintiffs' counsel also responded to discovery requests propounded by defendant for every one of the 185 remaining plaintiffs and opt-in plaintiffs.  The discovery costs alone, which plaintiffs' counsel disbursed, exceeded $50,000.   Finally, it is notable that plaintiffs were informed of the attorneys' fees component of the settlement agreement and all plaintiffs approved.

The allocation and settlement of attorneys' fees claimed in the case was the subject of independent negotiation during the settlement conference with Magistrate Judge Beeler. Plaintiffs' counsel had itemized in excess of $525,000.00 in attorneys' fees which had been tracked in both firms' accounting systems during the administrative and District Court phases of this litigation.  In addition, counsel for plaintiffs advanced in excess of $60,000.00 in litigation costs and expenses during the pendency of the matter.  The negotiated $425,000.00 fee element of

7

1  the settlement agreement was a result of additional compromise and negotiation designed to

2  secure the defendant's agreement to enter into the settlement with the individual plaintiffs.

3  **VI.      THE SETTLEMENT MERITS FINAL APPROVAL**

4          **A.      The Class Action Settlement Process**

5          Courts frequently rely on Rule 23 class action jurisprudence to analyze analogous issues

6  in the collective action context. *See, e.g., Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d

7  215, 223 (3d Cir. 2016) ("[C]ourts have been left to consider these matters when they arise,

8  frequently borrowing or adapting procedures, concepts, and nomenclature from the Rule 23 class

9  action context."). Pursuant to Federal Rule of Civil Procedure 23(e), class actions "may be

10  settled, voluntarily dismissed, or compromised only with the Court's approval." As a matter of

11  "express public policy," federal courts favor and encourage settlements, particularly in class

12  actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any

13  potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 995 F.2d

14  1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly

15  where complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095,

16  1101 (9th Cir. 2008) (same); *see also 4 Herbert B. Newberg & Alba Conte, Newberg on Class*

17  *Actions* §11:41 (4th ed. 2002) (same, collecting cases).

18          The Manual for Complex Litigation (Fourth) (2004) describes the three-step procedure for

19  approval of class action settlements; (1) preliminary approval of the proposed settlement; (2)

20  dissemination of the notice of the settlement to class members, providing for, among other things,

21  a period for potential objectors and dissenters to raise challenges to the settlement's

22  reasonableness; and (3) a formal fairness and final settlement approval hearing. *Id.* at §21.63.

23  These procedures have been somewhat circumvented in this case inasmuch as all individual class

24  plaintiffs have personally signed settlement agreements and thereby agreed to the terms and

25  conditions contained therein. Accordingly, this court may grant both preliminary and final

26  approval of the proposed settlement and take notice of the fact that there is no necessity for a

27  period of time for dissemination of notice of settlement to absent class members since no class

28

Joint Notice of Motion and Motion and Memorandum in Support of Final Approval of
Collective Action Agreement
Case No.  3:15-cv-02740-JST

1  members are absent from this proceeding.  The formal fairness and settlement approval hearing

2  can be concluded within this same process.

3        Plaintiffs and counsel now request that the Court take the third and final step conducting a

4  fairness hearing and granting final approval of the settlement.

5        **B.**    **The Settlement Meets the Ninth Circuit's Standards for Final Approval.**

6        To approve a class action settlement, the Court must determine whether the settlement is

7  "fundamentally fair, adequate and reasonable." *In re Rambus Inc. Derivative Litig.,* No. C-06-

8  3515-JF, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing Fed. R. Civ. P. 23(e)); see also

9  *Mego Financial Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000); *Officers for Justice v. Civil*

10  *Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). "Although Rule 23 imposes strict procedural

11  requirements on the approval of a class settlement, a district court's only role in reviewing the

12  substance of that settlement is to ensure that it is "fair, adequate, and free from collusion."" *Lane*

13  *v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d

14  1011, 1027 (9th Cir. 1998)).  When class counsel is experienced and supports the settlement, and

15  the agreement was reached after arm's-length negotiations, courts should give a presumption of

16  fairness to the settlement. *See Nobles v. MBNA Corp.,* No. C 06-3723 CRB, 2009 WL 1854965,

17  at *2 (N.D. Cal. June 29, 2009); *Ellis v. Naval Air Rework Facility;* 87 F.R.D. 15, 18 (N.D. Cal.

18  1980), aff'd, 661 F.2d 939 (9th Cir. 1981).  Additionally, "[i]t is the settlement taken as a whole,

19  rather than the individual component parts, that must be examined for overall fairness." *Staton v.*

20  *Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).

21        The Ninth Circuit has identified "the strength of the plaintiffs' case; the risk, expense,

22  complexity, and likely duration of further litigation; the risk of maintaining class action status

23  throughout the trial; the amount offered in settlement; the extent of discovery completed and the

24  stage of the proceedings; the experience and views of counsel; the presence of a governmental

25  participant; and the reaction of the class members to the proposed settlement as factors for

26  determining whether a settlement is fair, reasonable, and adequate. *See Hanlon,* 150 F.3d at

27  1026. "The relative degree of importance to be attached to any particular factor will depend on

28  the unique circumstances of each case." *Officers for Justice,* 688 F.2d at 625.  As discussed

below, all of the relevant factors set forth by the Ninth Circuit for evaluating the fairness of a settlement at the final stage also support final approval, and there can be no doubt that the Settlement was reached in a procedurally fair manner given Magistrate Laurel Beeler's extensive involvement and active guidance and assistance.  For these reasons, the settlement merits final approval.

**C.    The Settlement Is Substantively Fair Because It Provides Significant Benefits in Exchange for The Compromise of Disputed Claims.**

As noted in the summary of the settlement terms above, and in the settlement itself, the settlement compensates plaintiffs for the alleged loss of leave and lost earnings arising from the field office closure order.  The opt-in plaintiffs support this settlement, as does Defendant and all individual class members who have signed the settlement agreement.  It is uncertain whether the class would be able to obtain and sustain a better outcome through continued litigation, trial and appeal, and, in fact, there is a substantial chance that plaintiffs would recover nothing at all.

**D.    The Settlement Is Procedurally Fair as the Product of Good Faith, Informed, and Arm's-Length Negotiations.**

Under the Magistrate Judge's guidance and supervision, the parties entered into a reasoned and well-informed settlement.  The settlement terms consider how to appropriately compensate the two types of plaintiffs—current employees and former employees—and what would be adequate consideration for each type.

**E.    Uniformly, the Class Members Approve the Settlement Terms**

The reaction of the opt-in plaintiffs to the proposed Settlement has been overwhelmingly positive.  This is evidenced by the fact that all opt-in plaintiffs have signed the settlement agreement.  This strong, positive and unanimous reaction provides powerful evidence of the settlement fairness. *See, e.g., Churchill Vill.,* L.L. C. v. GE, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500 opt-outs from class of 90,000 members, roughly 0.6%); *Chun-Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 852 (N.D. Cal. 2010) (finding that sixteen opt outs in a class of 329 members, or 4.86% of the class, demonstrated an absence of a negative reaction and strongly supported settlement); *Glass v. UBS*

10

1    *Fin. Serv., Inc.,* No. C-06-4068-MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007)

2    (approving settlement with 2% opt-out rate); *Wren v. RGIS Inventory Specialists*, No. C-06-

3    05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (holding that 'the absence of a

4    large number of objections to a proposed class action settlement raises a strong presumption that

5    the terms of a proposed class action settlement are favorable to the class members") (quoting

6    *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *see also*

7    *Gerner v. State Farm Mut. Auto. Ins. Co.,* No. C081365 CW (EMC), 2010 WL 1687832, at *14

8    (N.D. Cal. Apr. 22, 2010); *Riker v. Gibbons,* No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012,

9    at *5 (D. Nev. Oct. 28, 2010) ("the small number of objections is an indication that the settlement

10    is fair, adequate and reasonable").

11    **VII.    CONCLUSION**

12    For the foregoing reasons, plaintiffs, plaintiffs' counsel, and defendant respectfully

13    request that the Court approve the Stipulated Settlement Agreement.

14    DATED this 25th day of May, 2018.

15                             **CLARK HILL PLLC**

16

17                    By:   ***/s/ Nicholas M. Wieczorek***
                              NICHOLAS M. WIECZOREK
                              Nevada Bar No. 6170

18                              California Bar No. 110170
                             JEREMY THOMPSON (Pro Hac Admission)

19                              Nevada Bar No. 12503
                             3800 Howard Hughes Parkway, Suite 500

20                              Las Vegas, Nevada 89169

21

22                              ERNEST B. ORSATTI (Pro Hac Admission)
                             PA Bar No. 19891

23                              WILLIAM F. WARD
                             PA Bar No. 25266 (Pro Hac Admission)

24                              ROTHMAN GORDON, P.C.
                             310 Grant Street, Third Floor

25                              Pittsburgh, PA 15219
                             Attorneys for Plaintiffs

26

27

28

Joint Notice of Motion and Motion and Memorandum in Support of Final Approval of
Collective Action Agreement
Case No. 3:15-cv-02740-JST

1

2

3

4

5

6

7

By:  */s/ Wendy M. Garbers*
     ALEX G. TSE (CABN 152348)
     Acting United States Attorney
     SARA WINSLOW (DCBN 457643)
     Chief, Civil Division
     WENDY M. GARBERS (CABN 213208)
     Assistant United States Attorney
     450 Golden Gate Avenue, Box 36055
     San Francisco, California  94102-3495
     Telephone:   (415) 436-4365
     Facsimile:   (415) 436-7234
     Email:  wendy.garbers@usdoj.gov
     *Attorneys for Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joint Notice of Motion and Motion and Memorandum in Support of Final Approval of
Collective Action Agreement
Case No.  3:15-cv-02740-JST

1

**CERTIFICATE OF SERVICE**

2    I HEREBY CERTIFY that I am an employee of Clark Hill, and that on this 25th day of

3  May, 2018, I served a true and correct copy of the foregoing **JOINT NOTICE OF MOTION**

4  **AND MOTION AND MEMORANDUM IN SUPPORT OF COLLECTIVE ACTION**

5  **AGREEMENT** via the Court's CM/ECF program upon all counsel registered for this specific

6  litigation.

7  Wendy M. Garbers, Esq.
   California Bar No. 213208
8  United States Attorney's Office
9  450 Golden Gate Avenue, Floor 9
   San Francisco, California 94102
10  Telephone:     (415) 436-6475
    Facsimile:      (415) 436-7234
11  Email: wendy.garbers@usdoj.gov
    *Attorneys for Defendant*
12

13

14
                                          /s/ Nancy Rodriguez_____
                                          An Employee of Clark Hill
15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          13