UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendant. | Case No. 15-cv-02740-JST<br><br>**ORDER DENYING MOTION FOR APPROVAL OF PARTIES' COLLECTIVE ACTION SETTLEMENT WITHOUT PREJUDICE**<br><br>Re: ECF No. 137 |

Before the Court is Plaintiffs' and Defendant's joint motion for final approval of a collective action settlement. ECF No. 137. For the reasons set forth below, the motion is denied without prejudice.

## I.   BACKGROUND

### A.   Factual Background

The Federal Air Marshal Service ("the Service") is a federal law enforcement agency within the Transportation Security Administration ("TSA") whose mission "is to protect the nation's commercial aviation system, by detecting, deterring, and defeating hostile acts targeting U.S. air carriers, airports, passengers and crews." ECF No. 70 ¶ 2. Before the September 11, 2001 attacks, the Service had only thirty-three Federal Air Marshals ("FAMs"). *Id.* ¶ 4. After the attacks, "President George W. Bush ordered the rapid expansion of the [Service]" and "thousands of FAMs were added to the ranks." *Id.*

Until 2014, each FAM worked out of one of the Service's twenty-six field offices across the country. ECF No. 70-2 at 5. In 2014, the Service and the TSA approved the closure of field

offices in Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa.[1] ECF No. 70 ¶¶ 20, 29.

Plaintiffs are current and former FAMs employed by Defendant, the Secretary of the Department of Homeland Security. ECF No. 50 ¶¶ 4-8 (Second Amended Complaint). All are over forty years of age. *Id*. Plaintiffs allege that the TSA targeted the six Field Offices for closure in an attempt to drive out older FAMs "so that it could in turn 'hire two young FAMs for every older FAM.'" *Id.* at ¶¶14-16. Plaintiffs claim that "[t]he actual process in which TSA designated the Field Offices for closure was based on age discrimination and designed to rid older FAMs from its workforce." *Id.* at ¶ 31. Plaintiffs allege damages of lost wages, leave hours, and mental and emotional distress. *Id.* ¶¶ 24-29.

**B.   Procedural Background**

Plaintiff K.H. filed suit on behalf himself and all similarly situated FAMs in the six closed offices on June 18, 2015. ECF No. 1. The Second Amended Complaint, alleging disparate treatment and disparate impact claims under the Age Discrimination in Employment Act ("ADEA"), was filed on May 11, 2016. ECF No. 50.

On July 18, 2016, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and conditionally certified the following class:

> All Federal Air Marshals who were impacted by the closure of the Federal Air Marshal Service's Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa offices and who were over 40 years of age at the time the decision to close the offices was made.

ECF No. 56 at 6. On June 30, 2017, the Court granted summary judgment as to Plaintiffs' disparate impact claim, and denied it as to their disparate treatment claim. ECF No. 103 at 18. Shortly thereafter, with the assistance of Magistrate Judge Beeler acting as a settlement judge, the parties entered into a conditional settlement agreement. ECF No. 137 at 6. Plaintiffs and Defendant now jointly move for approval of their settlement agreement. ECF No. 137 at 7.

---

[1] A more complete recitation of the facts is contained in the Court's order granting in part and denying in part Defendant's motion for summary judgment. ECF No. 103 at 1-4.

2

### C. Overview of Settlement Agreement

Under the terms of the settlement agreement, Defendant agrees to pay all class members who have separated from the Service a total sum of $1,500. ECF No. 144 at 2. There will be no tax withholding from this amount. *Id.* For class members who remain employed with the Service, Defendant agrees to provide seven additional days of leave, reflected as fifty-six hours of restored annual leave in the Service's accounting system. *Id.* at 2-3. Finally, Defendant will pay Plaintiffs' counsel $425,000 in full satisfaction of all claims for attorney's fees and costs. *Id.* at 4.

In exchange, Plaintiffs agree to release:

> any and all obligations, damages, liabilities, actions, causes of actions, claims and demands of any kind and nature whatsoever, including claims arising under the Age Discrimination in Employment Act, 29 U.S.C. § 633a, whether suspected or unsuspected, at law or in equity, known or unknown, or omitted prior to the date he executes this Agreement, which arise from or relate to each Plaintiff's employment with Defendant and/or the Federal Air Marshal Service.

*Id.* at 3.[2]

### D. Jurisdiction

This Court has jurisdiction over this action under 28 U.S.C. § 1331.

## II. LEGAL STANDARD

### A. Authority to Review

The ADEA makes it unlawful for an employer to discriminate against employees on the basis of age. 29 U.S.C. § 623(a)(2). Employees may bring collective age discrimination actions under the ADEA, which "shall be enforced using certain of the powers, remedies, and procedures of the FLSA." *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal 1991); *see also* 29 U.S.C. § 626(b). Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing FLSA collective action provision, 29 U.S.C.

---

[2] The settlement agreement identifies several pending individual claims to which the release does not apply. *See* ECF No. 144 at 3.

3

§ 216(b), in context of ADEA claims). Under § 216(b), collective actions against employers may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

"Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (citing *Sperling*, 493 U.S. at 177-78). While class members in a Rule 23 class action may be bound by a judgment without their consent, members in a collective action must expressly opt in to the collective action by written consent. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see* Fed. R. Civ. P. 23. Further, while Rule 23 expressly requires that courts review settlement agreements that bind class members for fairness, reasonableness, and adequacy, there is no such statutory requirement in the FLSA or the ADEA. *See* Fed. R. Civ. P. 23(e)(2).

The parties submit that this Court has the authority to approve their settlement agreement because "[a]ccording to caselaw in this District settlements of collective action claims under the FLSA require court approval." ECF No. 137 at 7 (internal quotation marks and citations omitted). The parties are correct that courts in this district and this circuit have followed the Eleventh Circuit's holding that FLSA collective action settlements require the supervision of either the Secretary of Labor or the district court.[3] *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

---

[3] The Court notes that "[u]nder the Older Workers Benefit Protection Act ("OWBPA"), '[a]n employee 'may not waive' an ADEA claim unless the employer complies with the statute.' To this end, '[t]he OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law . . . [and] creates a series of pre-requisites for knowing and voluntary waivers.'" *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1076 (9th Cir. 2007) (quoting *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998)). The parties did not address whether the OWBPA impacts this Court's authority to review this settlement agreement. However, when interpreting the ADEA, the Supreme Court has noted that the "selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the

4

1350, 1352-53 (11th Cir. 1982); *see also Seminiano v. Xyris Enter.*[4]*, Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015); *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *1 (N.D. Cal. June 22, 2017); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 12643008, at *3 (N.D. Cal. Dec. 26, 2014). Because the provisions of the ADEA are "enforced in accordance with the powers, remedies, and procedures" provided by the FLSA, the Court will review the settlement agreement. *See* 29 U.S.C. § 626(b).

### B. Standard of Review

The Ninth Circuit has not established the criteria that a district court must consider in determining whether a collective action settlement agreement under 29 U.S.C. § 216(b) warrants approval. Most courts evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."[5] *See Lynn's Food Stores*, 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

---

remedies and procedures of the FLSA." *Lorillard v. Pons*, 434 U.S. 575, 582 (U.S. 1978). This suggests that judicial review of a collective action settlement is permitted. *See also Manning v. New York Univ.*, No. 98 CIV. 3300(NRB), 2001 WL 963982, at *14 (S.D.N.Y. Aug. 22, 2001), *aff'd*, 299 F.3d 156 (2d Cir. 2002) ("The question before us is whether in adding Section 626(f)'s provisions for unsupervised waivers, Congress displaced the traditional FLSA exceptions for EEOC and court supervised waivers . . . . However, the legislative history indicates that it did not. It appears that the new waiver provision's purpose was to expand employees' ability to settle suits with employers in appropriate circumstances, not to limit it.").

[4] Pursuant to Ninth Circuit Rule 36-3, *Seminiano* is not precedential. Nevertheless, the Court uses it as persuasive authority.

[5] *See, e.g.*, *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *2 (N.D. Cal. June 22, 2017); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 12643008, at *3 (N.D. Cal. Dec. 26, 2014); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).

## III. DISCUSSION

### A. Bona Fide Dispute

The settlement agreement resolves a bona fide dispute concerning liability under the ADEA.  As illustrated in the briefing on the various motions submitted to the Court in the course of this litigation, the case involves genuinely disputed issues, including, for example, the reasons behind the Service's field office closures.  Plaintiffs allege "that the office closure decision was driven by age bias and discriminatory motive."  ECF No. 137 at 6.  Defendant argues that the office closures were based on risk and efficiency analysis, not age discrimination.  *Id.* at 7.  There is also a "question as to the nature and extent of available damages" available under the ADEA.  *Id.*

### B. Fair and Reasonable Settlement Agreement

In evaluating a proposed FLSA settlement, a district court must determine whether the settlement reflects "a fair and reasonable resolution of a bona fide dispute."  *Lynn's Food Stores*, 679 F.2d at 1355.  To determine whether a settlement is fair and reasonable, district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The parties contend that the settlement is fair and reasonable because Plaintiffs face the risk that they would receive no recovery if this matter proceeded to trial; the settlement was supervised by Magistrate Judge Beeler and was the product of arm's-length negotiations; and Plaintiffs unanimously approve the settlement terms.  ECF No. 137 at 15.  While these factors lend support for finding that the settlement agreement is fair and reasonable, there are several

6

deficiencies that preclude the Court's approval of the settlement.

### 1. Scope of the Release Provision

When evaluating collective action settlement agreements under the FLSA, courts in this district have held that "[a] FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *See Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017) (citing *Daniels v. Aeropostale W., Inc.*, No. C 12-05755-WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014)). Courts, therefore, "routinely reject FLSA settlements when the scope of the release goes beyond the . . . claims asserted in the complaint." *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *5 (N.D. Cal. Jan. 13, 2016) (listing additional cases where courts have rejected overbroad FLSA settlements).

Here, Plaintiffs agree to release Defendant from "any and all obligations, damages, liabilities, actions, causes of actions, claims and demands of any kind and nature whatsoever, including claims arising under the Age Discrimination in Employment Act, 29 U.S.C. § 633a, whether suspected or unsuspected, at law or in equity, known or unknown, or omitted prior to the date he executes this Agreement, which arise from or relate to each Plaintiff's employment with Defendant and/or the Federal Air Marshal Service."[6] ECF No. 144 at 3. Courts in this district have rejected similarly broad provisions in other FLSA actions. *See, e.g.*, *Dunn*, 2016 WL 153266, at *5 (rejecting FLSA settlement that released the defendants from "all claims asserted in the Action and any and all claims . . . arising out of or in any way connected with, directly or indirectly, *any* act, omission or state of events that has occurred during the Released Period") (emphasis in original); *Otey*, 2014 WL 12643008, at *6 (rejecting FLSA settlement agreement where class members released "not only the FLSA claims they actually brought, but also any federal law claim related to their FLSA or potential FLSA claims"); *Mckeen-Chaplin v. Franklin Am. Mortgage Co.*, No. 10-cv-5243-SBA, 2012 WL 6629608, at *1-5 (N.D. Cal. Dec. 19, 2012)

---

[6] *See* note 2, *supra*.

(rejecting an FLSA settlement agreement release where the plaintiffs released the defendant and others "from any and all claims . . . whether known or unknown, arising from, relating to, or in any way connected with [their] employment with or termination of employment from [Defendant]"). Similarly, the Court concludes that the scope of the release in this action – which goes far beyond the ADEA claims at issue – is improper. The broad scope of the release provision precludes settlement approval.

### 2. Plaintiff's Range of Recovery

The parties contend that the settlement is fair because it "compensates plaintiffs for the alleged loss of leave and lost earnings arising from the field office closure." ECF No. 137 at 15. Under the agreement, all class members who have separated from the Service will be paid a total sum of $1,500, and class members who remain employed with the Service will receive seven additional days of leave. ECF No. 137-1 at 3-4.

The Court cannot determine whether the settlement amount is fair or reasonable, however, until the parties provide an estimate of the Plaintiffs' range of recovery if they were to prevail on their FLSA claims. In the analogous class action settlement context, the Court has more than once denied motions for approval where the plaintiffs "provide[d] no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims." *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2013 WL 4028627, at *4 (N.D. Cal. Aug. 1, 2013). The Court has acknowledged that "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (*quoting In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). Nonetheless, the Court has also explained that "any fraction has a denominator, and without knowing what it is the Court cannot balance plaintiffs' expected recovery against the proposed settlement amount." *Id.*; *see also Peel v. BrooksAmerica Mortg. Corp.*, No. SACV1179JLSRNBX, 2013 WL 12133883, at *5 (C.D. Cal. Oct. 29, 2013) ("Plaintiffs provide the Court with no estimate of their expected recovery at trial and little substantive information regarding the strengths and weaknesses of their case . . . . Without more detailed information

8

regarding Plaintiffs' expected recovery, the Court is not in the position to assess whether the settlement falls within the range of possible approval."). Here, Plaintiffs have not even attempted to provide "hypothetical scenarios," *Stovall-Gusman v. W.W. Grainger, Inc.*, No. 13-CV-02540-JD, 2014 WL 5492729, at *2 (N.D. Cal. Oct. 30, 2014), that could produce various expected recoverable damages to measure against the proposed settlement amount. Given the lack of information in Plaintiffs' motion, the Court cannot determine whether the amount offered in settlement is adequate.

The parties note that "[i]t is uncertain whether the class would be able to obtain and sustain a better outcome through continued litigation," and that "in fact, there is a substantial chance that [P]laintiffs would recover nothing at all." *Id.* at 15. Parties also acknowledge the "question as to the nature and extent of available damages and the extent to which individual class members had lost pay as a result of the closure order." *Id.* at 7. These are legitimate concerns, and the Court will take them into account in evaluating whether the settlement is fair, but first the Court needs something to measure them against.

### 3. Attorney's Fees

The FLSA requires that a settlement agreement include an award of reasonable fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (internal quotation marks omitted).

The district court has discretion to choose either the percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). "The lodestar figure is calculated by multiplying the

number of hours the prevailing party reasonably expended . . . by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward." *Id.* (internal citations and quotation marks omitted). On the other hand, "[w]here a settlement produces a common fund for the benefit of the entire class," courts may employ either the lodestar or the percentage-of-recovery method. *Id.* at 942. Twenty-five percent of the fund is the benchmark for a reasonable fee award, although this may be adjusted to account for special circumstances. *Id.* Ultimately, the district court must exercise its discretion to reach a reasonable result. *Id.*

Because "Defendant will pay attorneys' fees and costs separately from, and in addition to, the Settlement benefits to Class members," the lodestar method is most appropriate in this action. ECF No. 137 at 12. Here, Plaintiffs' counsel claims to have "itemized in excess of $525,000 in attorneys' fees which had been tracked in both firms' accounting systems during the administrative and District Court phases of this litigation." *Id.* Plaintiffs' counsel also contends that it "advanced in excess of $60,000 in litigation costs and expenses" during this action. *Id.* The parties propose an attorneys' fees award of $425,000. *Id.* They contend that the negotiated $425,000 fee is "a result of additional compromise and negotiation designed to secure the defendant's agreement to enter into the settlement with the individual plaintiffs." *Id.* at 12-13. The parties note that "[n]one of the settlement benefits for Class Members will be reduced to pay attorneys' fees or to reimburse expenses of the Settlement Class Counsel." *Id.* They also assert that "hundreds of hours of work" have been devoted to this case, including responding to discovery requests "for every one of the 185 remaining plaintiffs." *Id.* Here, however, the Court cannot determine whether the requested attorneys' fees are reasonable because Plaintiffs' counsel have not submitted any supporting documentation. *See Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."). In many cases, complete billing records are unnecessary, and summaries of hours worked on particular categories of tasks are sufficient to allow the Court to evaluate whether the hours worked were reasonable. *Paeste v. Gov't of Guam*, 624 F. App'x 488, 490 (9th Cir.

10

2015); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 333 (N.D. Cal. 2014); *see also Weeks v. Kellogg Co.,* No. CV 09–08102 MMM RZX, 2013 WL 6531177, at *33 (C.D. Cal. Nov. 23, 2013) ("Although summaries [of hours worked] may be adequate . . . the submissions in this case cannot be characterized as 'summaries.'  They are better described as conclusory statements regarding the number of hours expended, as they provide no description whatsoever of the tasks performed, the hours spent on various types of task, or the relation of those tasks to the litigation.").  Counsel are ordered to submit such a summary here.  The summary should reflect the hours worked by each individual timekeeper; the hourly rate of each timekeeper; and the time spent on various categories of activities, including case development and investigation, the drafting of pleadings, discovery and document review, the drafting and arguing of motions, and the time spent negotiating the settlement, as well as any other category for which a substantial amount of time was expended. *McNeal v. RCM Techs. (USA), Inc.*, No. 2:16-CV-05170-ODW-SS, 2017 WL 2974918, at *2 (C.D. Cal. July 12, 2017).  Only in the event that the summary is insufficient will the Court require the submission of detailed billing records.

       An attorney is also entitled to "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support an expense award, plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category to permit a court to assess whether the expenses are reasonable.  *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).  Counsel must also provide receipts to support their claimed expenses.  *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2016 WL 3055643, at *10 (N.D. Cal. May 31, 2016), *appeal dismissed*, No. 16-16252, 2017 WL 4011879 (9th Cir. Feb. 22, 2017).  Here, Plaintiffs do not seek direct reimbursement of their costs, but they do justify their attorneys' fees request in part on the ground that "counsel for plaintiffs advanced in excess of $60,000.00 in litigation costs and expenses during the pendency of the matter."  ECF No. 137 at 12.  Accordingly, they must submit a list of their expenses, supported by

receipts.

## CONCLUSION

The parties' motion for approval of their collective class action settlement agreement is DENIED WITHOUT PREJUDICE. Parties may file a new motion that addresses the deficiencies identified in this order within 90 days of the date of this order.

**IT IS SO ORDERED.**

Dated: July 26, 2018

_____
JON S. TIGAR
United States District Judge