UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.H., ET AL.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　Defendant. | Case No. 15-cv-02740-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT**<br><br>Re: ECF No. 147 |

Before the Court is Plaintiffs' and Defendant's renewed joint motion for final approval of a collective action settlement. ECF No. 147. For the reasons stated below, the Court will grant the motion.

I.  **BACKGROUND**

　　A.  **Factual Background**

The Federal Air Marshal Service ("the Service") is a federal law enforcement agency within the Transportation Security Administration ("TSA") whose mission "is to protect the nation's commercial aviation system, by detecting, deterring, and defeating hostile acts targeting U.S. air carriers, airports, passengers and crews." ECF No. 70 ¶ 2. Before the September 11, 2001 attacks, the Service had only thirty-three Federal Air Marshals ("FAMs"). *Id.* ¶ 4. After the attacks, "President George W. Bush ordered the rapid expansion of the [Service]" and "thousands of FAMs were added to the ranks." *Id.*

Until 2014, each FAM worked out of one of the Service's twenty-six field offices across the country. ECF No. 70-2 at 5. In 2014, the Service and the TSA approved the closure of field

offices in Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa.[1]  ECF No. 70 ¶ 20, 29.

Plaintiffs are current and former FAMs employed by Defendant, the Secretary of the Department of Homeland Security.  ECF No. 50 ¶¶ 4-8 (Second Amended Complaint).  All are over forty years of age.  *Id*.  Plaintiffs allege that the TSA targeted the six Field Offices for closure in an attempt to drive out older FAMs "so that it could in turn 'hire two young FAMs for every older FAM.'"  *Id.* at ¶¶14-16.  Plaintiffs claim that "[t]he actual process in which TSA designated the Field Offices for closure was based on age discrimination and designed to rid older FAMs from its workforce."  *Id.* at ¶ 31.  Plaintiffs allege damages of lost wages, leave hours, and mental and emotional distress.  *Id.* ¶¶ 24-29.

**B.  Procedural Background**

Plaintiff K.H. filed suit on behalf himself and all similarly situated FAMs in the six closed offices on June 18, 2015.  ECF No. 1.  The Second Amended Complaint, alleging disparate treatment and disparate impact claims under the Age Discrimination in Employment Act ("ADEA"), was filed on May 11, 2016.  ECF No. 50.

On July 18, 2016, the Court granted Plaintiffs' Motion for Conditional Certification of a Collective Action, and conditionally certified the following class:

> All Federal Air Marshals who were impacted by the closure of the Federal Air Marshal Service's Cincinnati, Cleveland, Phoenix, Pittsburgh, San Diego, and Tampa offices and who were over 40 years of age at the time the decision to close the offices was made.

ECF No. 56 at 6.  On June 30, 2017, the Court granted summary judgment as to Plaintiffs' disparate impact claim, and denied it as to their disparate treatment claim.  ECF No. 103 at 18.  Shortly thereafter, with the assistance of Magistrate Judge Beeler acting as a settlement judge, the parties entered into a conditional settlement agreement.  ECF No. 137 at 6.

On July 26, 2018, the Court denied without prejudice the parties' joint motion for approval of their settlement agreement.  ECF No. 146.  The Court concluded that the scope of claims

---

[1] A more complete recitation of the facts is contained in the Court's order granting in part and denying in part Defendant's motion for summary judgment.  ECF No. 103 at 1-4.

2

released under the agreement was improperly broad and that the parties had provided insufficient information for the Court to determine the reasonableness of either the compensation to Plaintiffs or Plaintiffs' counsel's requested attorneys' fees. *Id.* at 7-11.

Plaintiffs and Defendant have modified the settlement agreement and now renew their joint move for final approval. ECF No. 147.

### C. Overview of Settlement Agreement

Under the terms of the settlement agreement, Defendant agrees to pay each class member who separated from the Service a total sum of $1,500. ECF No. 144 at 2. There will be no tax withholding from this amount. *Id.* For each class member who remains employed with the Service, Defendant agrees to provide seven additional days of leave, reflected as fifty-six hours of restored annual leave in the Service's accounting system. *Id.* at 2-3. Finally, Defendant will pay Plaintiffs' counsel $425,000 in full satisfaction of all claims for attorney's fees and costs. *Id.* at 4.

In exchange, Plaintiffs agree to release certain claims. *Id.* at 3. The parties have executed an addendum to the settlement agreement that limits that release to, in general terms, all possible claims arising out of the complaint's specific allegations regarding Defendant's decision to close the six offices. ECF No. 147-1 at 3.

## II. LEGAL STANDARD

### A. Authority to Review

The ADEA makes it unlawful for an employer to discriminate against employees on the basis of age. 29 U.S.C. § 623(a)(2). Employees may bring collective age discrimination actions under the ADEA, which "shall be enforced using certain of the powers, remedies, and procedures of the [Fair Labor Standards Act (FLSA)]." *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal 1991); *see also* 29 U.S.C. § 626(b). Collective actions allow aggrieved employees "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing FLSA collective action provision, 29 U.S.C. § 216(b), in context of ADEA claims). Under § 216(b), collective actions against employers may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other

3

employees similarly situated." 29 U.S.C. § 216(b).

"Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (citing *Sperling*, 493 U.S. at 177-78). While class members in a Rule 23 class action may be bound by a judgment without their consent, members in a collective action must expressly opt in to the collective action by written consent. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see* Fed. R. Civ. P. 23. Further, while Rule 23 expressly requires that courts review settlement agreements that bind class members for fairness, reasonableness, and adequacy, there is no such statutory requirement in the FLSA or the ADEA. *See* Fed. R. Civ. P. 23(e)(2).

As explained in the Court's prior order, the Court has authority to approve the parties' settlement agreement. *See* ECF No. 146 at 4-5.

## B. Standard of Review

The Ninth Circuit has not established the criteria that a district court must consider in determining whether a collective action settlement agreement under 29 U.S.C. § 216(b) warrants approval. Most courts, however, evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."[2] *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

---

[2] *See, e.g.*, *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *2 (N.D. Cal. June 22, 2017); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 12643008, at *3 (N.D. Cal. Dec. 26, 2014); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).

**III. DISCUSSION**

    **A. Bona Fide Dispute**

Having previously concluded that this action presents a bona fide dispute under the ADEA, *see* ECF No. 146 at 6, the Court turns to whether the settlement is fair and reasonable.

    **B. Fair and Reasonable Settlement Agreement**

In evaluating a proposed FLSA settlement, a district court must determine whether the settlement reflects "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. To determine whether a settlement is fair and reasonable, district courts implicitly or explicitly consider the factors that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As noted in the Court's July 26, 2018 order, several important factors weigh in favor of a finding that the settlement agreement is fair and reasonable. ECF No. 146 at 6. Plaintiffs face the risk of recovering nothing at trial; Magistrate Judge Beeler supervised the settlement, which was the product of arm's-length negotiations; and Plaintiffs unanimously approve the settlement terms.

The Court next considers the deficiencies identified in its prior order.

    **1. Scope of Release Provision**

The first iteration of the settlement agreement released any and all of Plaintiffs' possible claims arising out of their *employment* with Defendant, regardless of any connection to the claims or allegations at issue in this action. *See* ECF No. 146 at 7. The Court rejected this release, concluding it was impermissibly overbroad. *Id.*

The parties have narrowed the scope of the release to cover the following:

> such obligations, damages, liabilities, actions, causes of actions, claims and demands arising out of the allegations in the Second Amended Complaint regarding the Federal Air Marshal Service's

5

> decision to close six of its offices and to offer transfers to impacted Federal Air Marshals, including allegations of age discrimination as prohibited by the Age Discrimination in Employment Act, 29 U.S.C. § 633a, constructive discharge, and retaliation.

ECF No. 147-1 at 3.

The Court concludes that the modified release is "fairly [and] reasonably tethered to the consideration Plaintiffs are receiving based on their [ADEA] claims." *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *5 (N.D. Cal. Jan. 13, 2016). The release covers only claims arising out of a highly specific action by Defendant, namely, closing six offices, and thus "generally tracks the claims asserted in this lawsuit." *Luo v. Zynga Inc.*, No. 13-CV-00186 NC, 2014 WL 457742, at *3 (N.D. Cal. Jan. 31, 2014) (approving FLSA settlement release for all claims "arising out of or related to all claims asserted in this lawsuit" (emphasis omitted)); *cf. Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 475095, at *5 (N.D. Cal. Feb. 6, 2017) (approving similar release in hybrid class action and collective action settlement); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610-MEJ, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (same); *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011) (same). Because the release is appropriately limited to claims related to those litigated in this lawsuit, the Court finds it is sufficiently narrow to support approval.

### 2. Plaintiff's Range of Recovery

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Under the agreement, all class members who have separated from the Service will be paid a total sum of $1,500, and class members who remain employed with the Service will receive seven additional days of leave. ECF No. 137-1 at 3-4. Based on the additional information provided by the parties, the Court now concludes that this represents a fair and reasonable settlement amount in light of Plaintiffs' range of possible recovery.

The parties aptly note that "[c]ompensatory damages for pain and suffering and punitive damages are not available under the ADEA," and so Plaintiffs' damages would have been limited to "the recovery of unpaid . . . wages or overtime pay." *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009) (citing 29 U.S.C. §§ 216(b), 621, 626(b)). Plaintiffs who relocated to other offices were already provided five days of paid leave to move, ECF No. 81 ¶ 26, and would be relying on a legally and factually speculative theory to demonstrate a limited amount of lost wages, *see* ECF No. 147 at 9-11. Given these difficulties, seven additional days of paid leave is a reasonable recovery for the relocating Plaintiffs. As for Plaintiffs who left the Service, the parties agree that only four of fifty-one attempted to obtain work to mitigate their damages. *Id.* at 12-13. Though the parties calculate that these four Plaintiffs could possibly recover up to $80-100,000, they acknowledge significant issues in proving liability. *Id.* at 13.

The Court finds that the settlement amount is fair and reasonable, given these considerations, combined with the usual risks, costs, and delay of further litigation.

In view of the factors discussed above, the Court concludes that the proposed settlement agreement is "a fair and reasonable resolution of a bona fide dispute," and will therefore approve it. *See Lynn's Food Stores*, 679 F.2d at 1355.

**IV.     ATTORNEYS' FEES AND COSTS**

The FLSA requires that a settlement agreement include an award of reasonable fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (internal quotation marks omitted).

**A.     Fees**

The district court has discretion to choose either the percentage-of-the-fund or the lodestar method to determine what constitutes a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought – and obtained – is often primarily injunctive in

7

nature and thus not easily monetized." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended . . . by a reasonable hourly rate for the region and for the experience of the lawyer. Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward." *Id.* (internal citations and quotation marks omitted). On the other hand, "[w]here a settlement produces a common fund for the benefit of the entire class," courts may employ either the lodestar or the percentage-of-recovery method. *Id.* at 942. Twenty-five percent of the fund is the benchmark for a reasonable fee award, although this may be adjusted to account for special circumstances. *Id.* Ultimately, the district court must exercise its discretion to reach a reasonable result. *Id.*

Because "Defendant will pay attorneys' fees and costs separately from, and in addition to, the Settlement benefits to Class members," the lodestar method is most appropriate in this action. ECF No. 137 at 12. Here, Plaintiffs' counsel claims to have "itemized in excess of $525,000 in attorneys' fees which had been tracked in both firms' accounting systems during the administrative and District Court phases of this litigation." *Id.* Plaintiffs' counsel also contends that it "advanced in excess of $60,000 in litigation costs and expenses" during this action. *Id.* The parties propose an attorneys' fees award of $425,000. *Id.* They contend that the negotiated $425,000 fee is "a result of additional compromise and negotiation designed to secure the defendant's agreement to enter into the settlement with the individual plaintiffs." *Id.* at 12-13. The parties note that "[n]one of the settlement benefits for Class Members will be reduced to pay attorneys' fees or to reimburse expenses of the Settlement Class Counsel." *Id.* They also assert that "hundreds of hours of work" have been devoted to this case, including responding to discovery requests "for every one of the 185 remaining plaintiffs." *Id.*

Pursuant to the Court's instructions, Plaintiffs' counsel have submitted a summary of the hours spent on this litigation, demonstrating $569,046 in attorneys' fees. ECF No. 147 at 16-19. MPP/Clark Hill claims 960.5 hours of work at an average rate of roughly $289 per hour. *See id.* at 16-17. Rothman Gordon claims 798.4 hours of work at approximately $365 per hour. *See id.* at 18-19.

After reviewing the number of hours claimed, the summaries of work performed, and the requested hourly rates, the Court finds the claimed lodestar to reflect a reasonable number of hours at reasonable hourly rates, at least in light of the reduction in the settlement agreement.

**B.     Costs**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, Plaintiffs should file an itemized list of expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). Counsel must also provide receipts to support their claimed expenses. *MacDonald v. Ford Motor Co.*, No. 13-CV-02988-JST, 2016 WL 3055643, at *10 (N.D. Cal. May 31, 2016), *appeal dismissed*, No. 16-16252, 2017 WL 4011879 (9th Cir. Feb. 22, 2017). Here, Plaintiffs do not seek direct reimbursement of their costs, but they do justify their attorneys' fees request in part on the ground that "counsel for plaintiffs advanced in excess of $60,000.00 in litigation costs and expenses during the pendency of the matter." ECF No. 137 at 12.

Per the Court's prior order, Plaintiffs submitted a list of expenses, which relate to filing fees, deposition transcripts and videography services, expert witness fees, and travel and lodging expenses. ECF No. 147 at 19. In total, Plaintiffs claim $56,394.68 in costs. *Id.* Plaintiffs have also submitted supporting receipts. *See* ECF No. 147-8.

The Court concludes that these costs are reasonable, and therefore support the requested attorneys' fees.

Given that Plaintiffs' counsel have documented over $625,000 in fees and costs, the Court finds that the $425,000 award provided for in the settlement agreement, which does not reduce Plaintiffs' recovery, is reasonable.

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS approval of the parties' modified

collective action settlement.

**IT IS SO ORDERED.**

Dated: December 17, 2018



JON S. TIGAR
United States District Judge